UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00084-GNS

REBECKA DITSWORTH                                                              PLAINTIFF

v.

P & Z CAROLINA PIZZA, et al.                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Unopposed Motion for Leave to File Final Approval of Settlement and Motion for Approval of Attorneys' Fees Under Seal (DN 10), Plaintiff's Sealed Motions for Approval of Settlement and Attorneys' Fees and Costs (DN 11, 12), Defendants' Motion for Leave to Seal Document File Supplemental Memoranda (DN 15), and Defendants' Unopposed Motion for Leave to Seal Document (DN 23). The matters are ripe for adjudication. For the reasons discussed below, Plaintiff's Motion for Attorneys' Fees is **GRANTED IN PART** and **DENIED IN PART**, and the remaining motions are **GRANTED**.

### I.     STATEMENT OF FACTS

On May 5, 2020, Rebecka Ditsworth ("Ditsworth") sued Defendants P&Z Carolina Pizza, LLC d/b/a Papa John's, Charles H. Zoellers, and Daniel B. Patterson (collectively "Papa John's"), seeking unpaid wages under the Fair Labor Standards Act ("FLSA"), and Kentucky and North Carolina state wage laws. (Compl. 7-8, DN 1). Ditsworth represents delivery drivers for Papa John's who alleged they were not paid the federal minimum wage due to insufficient reimbursements for their vehicle expenses. (Compl. ¶¶ 23-33). Ditsworth subsequently filed an Amended Complaint on May 19, 2020. (Am. Compl., DN 4). The parties moved to conditionally certify a collective class under 29 U.S.C. § 216(b), preliminarily certify a putative class under Rule

23, and preliminarily approve the Settlement Agreement ("Agreement"). (Mot. Preliminary Approval of Class & Collective Action Settlement 1-2, DN 7). The Court granted the motion. (Order 1-2, DN 9). On October 16, 2020, the parties jointly moved for final approval of the Agreement and attorneys' fees and costs. (Sealed Mot. Approval Settlement, DN 11; Sealed Mot. Approval Att'ys' Fees & Costs, DN 12).

The Agreement is intended to settle claims on behalf of delivery drivers working for Papa John's in Kentucky, North Carolina, and Tennessee during respective "Release Period[s]".[1] (Sealed Doc. Ex. A, ¶ 31, DN 6-1 [hereinafter Agreement]). The Agreement identifies a "Total Settlement Amount" of $755,412.32, which is defined as the "total gross settlement amount for purposes of calculating the amounts necessary to fund settlement class distributions under this Agreement". (Agreement ¶ 30). The Agreement's "Net Settlement Amount" of $506,126.26, is defined as "the portion of the Total Settlement Amount used for calculating the amounts necessary to fund settlement class distributions . . . ." (Agreement ¶ 17). The Net Settlement Amount is based on a $0.40/mile rate to compensate a class of 704 drivers. (Joint Suppl. Br. Final Approval Class Settlement 2, DN 16-1). This amount is comprised of the "Kentucky Net Settlement Fund" of $186,559.49, the "North Carolina Net Settlement Fund" of $198,853.41, and the "Tennessee Net Settlement Fund" of $120,713.36. (Agreement ¶ 17).

The Agreement provides a claims process which allows a class member to opt-in to the FLSA collective action by filing a claim and thereby recover a "Potential Settlement Payment"[2].

---

[1] The "Release Period" is the period of time from "June 21, 2014, through the date the Court grants Preliminary Approval for Kentucky Class Members, and from March 1, 2017, through the date the Court grants Preliminary Approval for North Carolina Class Members and Tennessee Class Members." (Agreement ¶ 24).
[2] A member's "Potential Settlement Payment" is calculated by dividing the driver's "Individual Miles" – total number of miles making deliveries during the Release Period – by the respective "State Class Miles" – the aggregate of all "Individual Miles" in each respective class member's

(Agreement ¶ 40). If a class member does not opt-out of the settlement, the Agreement provides an automatic award of $50.00 for the Rule 23 class. (Agreement ¶ 40(d)). This type of settlement agreement is commonly referred to as a hybrid class action. *See Hendricks v. Total Quality Logistics, LLC*, No. 1:10-CV-649, 2011 WL 13350901, at *6 (S.D. Ohio Mar. 11, 2011) ("This Court agrees with the reasoning of the courts that have permitted both the FLSA opt-in claim and the state law opt-out class action claim to proceed in one hybrid case."); *see also Green v. Platinum Rests. Mid-Am., LLC*, 333 F.R.D. 102, 105 (W.D. Ky. 2019) (certifying a hybrid FLSA and Rule 23 class). Tennessee class members, however, do not need to submit a claim; so long as a Tennessee class member does not opt out, the member will receive a *pro rata* share of the Tennessee FLSA Claim Fund. (Agreement ¶ 46(b)).

The Agreement also contains a "clear sailing" provision, precluding Defendants from opposing class counsel's request for attorneys' fees of $248,307.85 and costs of $5,987.21. (Agreement ¶ 36). Additionally, the Agreement allocates any unclaimed funds to the "Reserve Fund", which is "a fund designated for late claims and contingencies to be paid out of the Total Settlement Amount, which shall not exceed . . . $15,000.00 . . . , plus any amounts remaining from the claim funds . . . ." (Agreement ¶ 25). The funds remain in the Reserve Fund for the "Reserve Fund Period".[3] (Agreement ¶ 39(d)). Ultimately, "[a]ny funds remaining after the Reserve Fund Period will be retained by Defendants." (Agreement ¶ 39(d)).

---

state of employment. (Agreement ¶ 40(a)(i)). The result is the driver's "Payment Ratio" which is then multiplied by the amount of the applicable state's Net Settlement Fund to determine the member's potential payment. (Agreement ¶ 40(a)(ii)).

[3] The Reserve Fund Period begins "on the calendar day following close of the Notice Period through the expiration of the three-year statute of limitations under the Fair Labor Standards Act, which will be three years following Preliminary Approval." (Agreement ¶ 24).

3

## II.    DISCUSSION

### A.   Settlement Agreement

"Parties to [a] settlement must proffer sufficient evidence to allow the district court to review the terms and legitimacy of the settlement . . . ." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp. (UAW)*, 497 F.3d 615, 635 (6th Cir. 2007) (citation omitted). "[T]he Court's role in approving a settlement of a FLSA collective action 'is comparable to that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23.'" *Castillo v. Morales, Inc.*, No. 2:12-CV-650, 2015 WL 13021899, at *3 (S.D. Ohio Dec. 22, 2015) (citation omitted). In deciding whether to approve the proposed settlement, the Court must consider whether the settlement is "fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e)(2). In making this determination, the Court considers the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631 (citations omitted).

#### 1.   *Likelihood of Success on the Merits*

In evaluating settlements, courts are not required "to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). The class alleged Papa John's violated the FLSA and state wage laws by failing to pay delivery drivers the federal minimum wage. The parties dispute whether the two-year statute of limitations for non-willful violations would apply and thus foreclose some of the classes' claims. (Mem. Supp. Sealed Mot. Approval Settlement 11). Similarly, the parties

represent that Papa John's financial status renders the settlement the best option for the class, as any significant judgment could bankrupt the local franchisee and leave nothing for the class. (Mem. Supp. Sealed Mot. Approval Settlement 13). The Court finds the parties have a bona fide dispute leading to an uncertain outcome. *See Burcham v. Taubra Corp.*, No. 3:17-CV-168, 2018 WL 3840827, at *2 (S.D. Ohio Aug. 13, 2018) ("A genuine good faith dispute existed over whether Plaintiffs were properly classified as independent contractors; the number of overtime hours allegedly worked; whether a two or three-year statute of limitations applied; and whether any liquidated damages were appropriate."); *Ganci v. MBF Inspection Servs., Inc.*, No. 2:15-CV-2959, 2019 WL 6485159, at *5 (S.D. Ohio Dec. 3, 2019) ("There is no guarantee that success in a class trial in bankruptcy would actually result in payment to class members at the end of Defendant's bankruptcy case. Thus, this settlement avoids one of the greatest risks to Plaintiffs and the class—that Plaintiffs would receive pennies on the dollar after winning on trial.").

A court, however, "cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *UAW*, 497 F.3d at 631 (citation omitted). The Agreement establishes State "Claim Funds", which allocate a total of $128,072.73 to the class.[4] (See Agreement ¶ 39). These amounts were based on an estimated 25% claim participation rate for Kentucky and North Carolina class members, and an estimated 15% claim participation rate for the Tennessee Net claimants. (Agreement ¶ 39(a)(i), (b)(i), (c)(i)). Considering the opt-in rate of

---

[4] For example, the Kentucky Claim Funds is comprised of a "FLSA claim fund" of $44,530.50, which is meant to satisfy the "Potential Settlement Payment" for Kentucky claimants, and a "Rule 23 fund" of $8,437.50, to satisfy the remaining drivers' $50.00 minimum payment. (Agreement ¶ 39(a)(i)-(ii)). North Carolina drivers are provided for similarly, with funds totaling $56,997.73. (*See* Agreement ¶ 39(b)(i)-(ii)). Tennessee drivers have only a "FLSA claim fund" of $18,107.00. (Agreement ¶ 39(c)(i)).

5

20.739%, the Court finds the amount reasonable. *See Bourne v. Ansara Rest. Grp., Inc.*, No. 16-10332, 2016 WL 7405804, at *2 (E.D. Mich. Dec. 22, 2016) ("[T]he [27.6%] participation rate of claimants mirrors a typical rate seen in similar litigation."); (*see also* Notice Settlement Administrator's February 9, 2021, Status Report 1, DN 18).

### 2. *Fraud or Collusion*

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) (citation omitted). Furthermore, as in this case, "the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) (citations omitted). Although the parties have included in their Agreement a clear sailing provision, "not every 'clear sailing' provision demonstrates collusion." *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012). The Court must be wary, however, of additional clauses granting unclaimed settlement amounts to the Defendants, which can function as an implicit tradeoff for such provisions. *See O'Bryant v. ABC Phones of N.C., Inc.*, No. 2:19-CV-02378, 2020 WL 4493157, at *17 (W.D. Tenn. Aug. 4, 2020) ("[C]ourts have been wary of those clauses governing unclaimed settlement funds."). Although the Reserve Fund here reverts to Defendants, the Agreement ultimately provides a minimum $50.00 payment to all class members. The Court, therefore, will presume an absence of fraud or collusion.

### 3. *Complexity, Expense, and Likely Duration of the Litigation*

"[M]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (internal quotation marks omitted) (citation omitted). The

parties seek settlement of 704 diverse claims. The Sixth Circuit has noted the complexity of cases like these, involving overlapping FLSA collective and state law wage claims. *See Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 898 (6th Cir. 2019). Accordingly, the Court finds this factor weighs in favor of final approval.

### 4. *Amount of Discovery Engaged in by the Parties*

"In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Wright v. Premier Courier, Inc.*, No. 2:16-CV-420, 2018 WL 3966253, at *4 (S.D. Ohio Aug. 17, 2018) (citations omitted). Thus, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.* (citation omitted) Given the small class size, "the most pertinent part of discovery is related to the amount of actual damages, and the parties have already engaged in discovery on that issue." *Peck v. Air Evac EMS, Inc.*, No. CV 5:18-615-DCR, 2019 WL 3219150, at *8 (E.D. Ky. July 17, 2019).

### 5. *Opinions of Class Counsel and Class Representatives*

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *See Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). The parties have endorsed this agreement as an "excellent" settlement for both parties, especially considering the potential bankruptcy of the franchisee. This factor, accordingly, weighs in favor of final approval.

### 6. *Reaction of Absent Class Members*

The Court considers the fact that not one class member objected to the settlement agreement to be most persuasive. *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000). This factor thus weighs heavily in favor of final approval.

### 7. *Public Interest*

"[T]he law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981), *on reh'g*, 670 F.2d 71 (6th Cir. 1982). "Class counsel took on a [] case that an individual class member would almost certainly never file on [his or her] own. The Settlement Class, moreover, obtained recovery on a class-wide basis for an alleged injury that, but for this litigation, would almost certainly have gone uncompensated." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 782 (N.D. Ohio 2010). The public interest, therefore, weighs in favor of the Agreement.

### B. **Attorneys' Fees**

"When a proposed settlement of FLSA claims includes the payment of attorneys' fees, the court must assess the reasonableness of the fee award." *O'Bryant*, 2020 WL 4493157, at *15 (citation omitted). The Agreement provides for payment to Plaintiff's counsel, with "clear sailing" from objection by Defendants, for $248,307.85. (Agreement ¶ 36). "In general, there are two methods for calculating attorney's fees: the lodestar and the percentage-of-the-fund." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). "To determine the 'work done,' courts often employ the 'lodestar approach,' which multiplies the number of hours reasonably expended in litigation by a 'reasonable hourly rate,' which the court can then, 'within limits, adjust . . . to reflect relevant considerations peculiar to the subject litigation.'" *He v. Rom*, 751 F. App'x 664, 673 (6th Cir. 2018) (internal citations omitted) (citation omitted). To reward

8

the results achieved, the Court employs the percentage-of-the-fund method. In performing this analysis, "courts must calculate the ratio between attorney's fees and benefit to the class" where "[a]ttorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class . . . ." *Gascho*, 822 F.3d at 282. "District courts have the discretion to select the particular method of calculation, but must articulate the reasons for adopting a particular methodology and the factors considered in arriving at the fee." *Id.* at 280 (internal quotation marks omitted) (citations omitted).

Counsel requests a 33% fee based on the percentage-of-the-fund award. (Sealed Mot. Approval Att'ys' Fees & Costs 8-9). Counsel contends a loadstar "cross-check" illustrates the reasonableness of their request, as they spent 181.5 hours on the case and will likely spend additional time finalizing the agreement and managing the Reserve Fund. (Sealed Mot. Approval Att'ys' Fees & Costs 6). Counsel maintains their billable hour rate of $565 results in a 2.42 multiplier, which is common in FLSA collective action cases in this Circuit. (Sealed Mot. Approval Att'ys' Fees & Costs 7).

Under the percentage-of-the-fund analysis counsel suggests, the Court must determine the total benefit to the class. *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016). "To determine the amount of the 'fund' for purposes of this analysis, courts include all amounts benefitting the class, including those amounts typically borne by the class, such as attorneys' fees and notice and administration costs." *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 WL 2009681, at *8 (S.D. Ohio Apr. 30, 2018). The total benefit of this Agreement includes the settlement funds, administrator's fees, Reserve Fund, Ditsworth's incentive payment, and attorneys' fees. *See Lonardo*, 706 F. Supp. 2d at 802-03. In the Fairness Hearing, the Court noted that under this approach, the proposed attorneys' fees swamp the funds actually distributed

to the class. The parties briefed the issue and cited *Gascho*, where the Sixth Circuit held a district court must generally consider only the fund made available to the class, as opposed to what is ultimately claimed.[5] (Joint Suppl. Br. Final Approval Class Settlement 2 (citing *Gascho*, 822 F.3d at 279)). In *Gascho*, the Sixth Circuit refused to limit attorneys' fees to the percentage of recovery actually claimed by the class, even where unclaimed funds reverted to the Defendant, like the Agreement here. *See Gascho*, 822 F.3d at 284. The simple fact, however, is that the amount claimed by the parties as available to the class ($506,126.26) is illusory. Paragraph IV of the Agreement establishes a "Maximum Settlement Amount" capping Defendants' **total payments** in this case at $422,358.79 which would **include** $248,307.85 in requested attorneys' fees versus only $128,072.73 in **actual** claim payments.[6] Accordingly, the requested fee equals almost 59% of the maximum amount Papa John's can be required to pay under the Agreement (i.e., $248,307.85 ÷ $422,358.79 = 0.5879).[7] This approach is untenable and is rejected.

---

[5] Defendants filed two motions to seal filings related to this hearing. (*See* DN 15; DN 23). The Court grants the motions.

[6] If the entire class opted-in to the Agreement, Papa John's would only be obligated to pay the class members $128,072.73, which is the aggregate of the State Claim Funds. In fact, the lower court in *Gascho* addressed a similar issue. *See Gascho v. Glob. Fitness Holdings, LLC*, No. 2:11-CV-436, 2014 WL 1350509, at *36 n.11 (S.D. Ohio Apr. 4, 2014), *report and recommendation adopted*, No. 2:11-CV-00436, 2014 WL 3543819 (S.D. Ohio July 16, 2014), *aff'd*, 822 F.3d 269 (6th Cir. 2016) ("Plaintiffs represent in various contexts that the available benefit is equal to $19 million . . . . Plaintiffs do not, however, provide their method for calculating these numbers. The Court calculates the Available Benefit as the total monetary compensation that Global Fitness is required to pay to Class and Subclass members under the Settlement Agreement *if every potential class member becomes an Allowed Claimant* . . . ." (emphasis added)).

[7] The parties offered to reallocate $48,700.04 so that "Settlement Class Members who opted-in to this Settlement . . . will now receive 100% of their potential settlement value." (Joint Suppl. Br. Supp. Final Approval Settlement Agreement 1, DN 24). To fund these distributions, in part, the parties offered to reduce the attorneys' fees by $37,670.83. (Joint Suppl. Br. Supp. Final Approval Settlement Agreement 2). The parties fail to explain why this reallocation is necessary when roughly 20% of the class filed a claim and the State "FLSA claim fund[s]" were already calculated at a 25% participation rate. (*See* Agreement ¶ 39(a)(i); Notice Settlement Administrator's February 9, 2021, Status Report 1). Regardless, the Court cannot rewrite a contract, and the parties

The Court directed the parties to distinguish a closely similar case where this Court approved an attorney's fee loadstar request of $13,000, without a multiplier based on an hourly rate of just under $400, in a matter involving the same dispute over pizza delivery driver vehicle expense reimbursement paid by a Papa John's franchisee and the same attorneys or law firms as the present action. *See Burnham v. Papa John's Paducah, LLC*, No. 5:18-CV-112-TBR, 2020 WL 2065793, at *5 (W.D. Ky. Apr. 29, 2020). The parties claim that in *Burnham* only the class members who previously opted-in would receive a payment, whereas this Agreement provides a minimum payment to members who do not opt out of the Rule 23 state law class action. (Agreement ¶ 39(a)(ii), (b)(ii)). Essentially, the parties argue that every class member will receive *something*. However, except to the extent the Court must consider—and has considered—the minimum payment as a part of the total benefit, this token payment of $50 per non-opt-out class member is insufficient to justify the requested attorneys' fees.

District Courts in this Circuit have consistently found a fee of 33% to be appropriate in similar cases. *See Ware v. CKF Enters., Inc.*, No. 5:19-183-DCR, 2020 WL 2441415, at *16 (E.D. Ky. May 12, 2020) (collecting cases). Accordingly, it appears reasonable to award Plaintiff's attorneys' fees based on the total benefit accruing to class members ($128,072.73) plus administrative costs ($5,978.21), the Reserve Fund ($15,000), and the incentive fee to Ditsworth ($5,000, discussed below), which total $154,050.94. Allowing attorneys' fees of $77,106.97 yields a total benefit to the class of $231,307.71, and an attorneys' fee equal to 33% (i.e., $231,307.71 ÷ 3 = $77,102.57). The Court also notes that this fee equates to a rate of $424.80 per hour for the 181.5 hours claimed by Plaintiff's counsel, which is in line with the fee approved by

---

have not tendered a modified agreement. Even considering the proposed fee reduction, the proposed fees would equal 49.87% of the "Total Benefit".

this Court in *Burnham*. Considering that the parties filed their motion for preliminary approval of the settlement less than 30 days after filing the Complaint, a fee of almost $70,000 appears reasonable.

### C. Incentive/Service Payment & Costs

Attorneys' costs are mandatory under the FLSA. 29 U.S.C. § 216(b). But the ultimate amount "is within the discretion of the judge" and must be reasonable. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (citation omitted). In cases involving overlapping FLSA collective action and Rule 23 class action claims, the Sixth Circuit has provided the same analysis. *See Déjà Vu Servs.*, 925 F.3d at 898. The Court finds the proposed costs of $5,978.21 in out-of-pocket expenses and settlement administration costs are reasonable. The Agreement also provides Ditsworth a $5,000.00 service award. When determining the reasonableness of an incentive payment, courts in the Sixth Circuit have considered the named plaintiffs' actions in protecting the class, the resulting benefits to the class, the risks assumed by the named plaintiffs, and the time and effort spent by the named plaintiffs, among other factors. *See Ware*, 2020 WL 2441415, at *17 (collecting cases).

Ditsworth has spent substantial time on this case and provided valuable information to counsel. (Sealed Mot. Approval Settlement Ex. 1, ¶ 13, DN 11-2). This service, viewed in comparison to her release of claims and the modest award, weighs in favor of approval.

### III. CONCLUSION

For the reasons discussed above, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion for Leave to Seal (DN 10) and Joint Motion for Final Approval of the Settlement Agreement (DN 11) are **GRANTED**.

2. Defendants' Motions for Leave to Seal (DN 15, 23) are **GRANTED**.

3. The provisionally certified Kentucky and North Carolina class is now finally certified pursuant to Fed. R. Civ. P. 23 for purposes of settlement only.

4. The conditionally certified FLSA collective action is now finally certified pursuant to 29 U.S.C. § 216(b) for purposes of settlement only.

5. Plaintiffs' Motion for Attorneys' Fees and Costs (DN 12) is **GRANTED IN PART** and **DENIED IN PART**.

6. The Clerk shall strike this matter from the active docket.

**This is a final and appealable order. There is no just cause for delay.**

Greg N. Stivers, Chief Judge
United States District Court

July 12, 2021

cc: counsel of record